UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BOSTON SCIENTIFIC SCIMED, INC., and
BOSTON SCIENTIFIC CORPORATION,

CIVIL NO. 05-651 (JNE/JSM)

    Plaintiffs,

v.

REPORT AND RECOMMENDATION

ev3, INC.

    Defendant.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came before the undersigned upon defendant ev3's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 125]. Robert D. Rhoad, Esq., Todd Messal, Esq., and Paul J. Robbennolt, Esq., appeared on behalf of plaintiffs. Jacob M. Holdreith, Esq., and Patrick M. Arenz, Esq., appeared on behalf of defendant. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings and the pre-hearing submissions, it is recommended that the defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 125] be GRANTED.

**I.   FACTUAL BACKGROUND**

Boston Scientific instituted this suit in March of 2005, alleging ev3's competing embolic protection filter system infringes four Boston Scientific embolic protection patents. In May of 2006, the Court permitted Boston Scientific to amend the Complaint to add a state law claim of misappropriation of trade secrets. At that time, Boston Scientific's trade secrets claim was based on a Boston Scientific document entitled

Embolic Protection Global Communications Brief, which Boston Scientific discovered during the course of discovery in ev3's document production.  On December 1, 2006, ev3 produced additional documents to Boston Scientific, including nineteen more Global Communications Briefs generated by Boston Scientific. Boston Scientific has now included those additional briefs in its claim of misappropriation of trade secrets.

According to Boston Scientific, Global Communications Briefs were used by Boston Scientific as an internal communications tool to facilitate communications within the company regarding marketing and education of healthcare professionals who used Boston Scientific products.  Robbennolt Decl. (filed under seal), Ex. B (Boston Scientific's Fourth Supplemental Response to Interrogatory No. 12), p. 3 [Docket No. 140].  Boston Scientific asserts that the Global Communications Briefs contained sensitive and proprietary information, and reflected sensitive business strategies, some of which would not be known outside the company at any time.  Id.  Boston Scientific learned that ev3 had acquired the Global Communications Briefs from a former Boston Scientific employee, Avery Augustine, who had gone to work for ev3.  Id., p. 4.

Upon receipt of the additional nineteen Global Communications Briefs, Boston Scientific moved to have the fact discovery deadline extended to permit it to engage in discovery to determine how those documents bore on its trade secrets claim against ev3.  This Court granted Boston Scientific's motion, finding that the documents were "sufficiently related to Boston Scientific's claim of misappropriation of trade secrets to warrant discovery pertaining to these documents within the instant litigation."  Order dated December 8, 2006, ¶ 1 [Docket No. 107].  At the same time, the Court stated that

2

its decision would not "preclude ev3 from pursuing a motion to sever Boston Scientific's trade secrets claim from this suit." Id. at ¶ 4.

Thereafter, the parties engaged in discovery on the trade secrets claim.

ev3 has now filed the present motion to dismiss Boston Scientific's trade secrets claim for lack of jurisdiction, contending that as this claim is now articulated by Boston Scientific, this Court can no longer sustain supplemental jurisdiction over it.

## II.   ANALYSIS

This Court has original jurisdiction over Boston Scientific's patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a).  This Court does not have original jurisdiction over claims arising under state statute.  When the Court permitted Boston Scientific to assert its state law claim of misappropriation of trade secrets, it did so pursuant to 28 U.S.C. § 1367(a), which permits the exercise of supplemental jurisdiction over state claims.  ev3 now challenges supplemental jurisdiction over Boston Scientific's trade secret claim based on the changed nature of the claim.  In opposition, Boston Scientific asserts that the Court is able to maintain supplemental jurisdiction over the trade secrets claim under § 1367(a). Alternatively, it argues that independent federal jurisdiction over the trade secrets claim exists when the trade secrets claim is combined with a claim under the Computer Fraud and Abuse Act (CFAA).

### A.   Jurisdiction Under § 1367(a)

28 U.S.C. §1367(a) provides as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the

> same case or controversy under Article III of the United States Constitution.

28 U.S.C. §1367(a).

Subsection (c) of §1367 permits the Court to decline to exercise supplemental jurisdiction if any of the following conditions are met:

> 1. The claim raises a novel or complex issue of State law,
> 2. The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> 3. The district court has dismissed all claims over which it has original jurisdiction, or
> 4. In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

Therefore, if a plaintiff's claims under state law form part of the same case or controversy as its federal claims, then pursuant to §1367(a) the Court is obliged to exercise supplemental jurisdiction in the absence of one of the exceptions set forth in §1367(c). See Moubry By and Through Moubry v. Independent School Dist. No. 696 (Ely), 951 F.Supp. 867, 890 (D.Minn. 1996) (citing McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)).

Supplemental, or pendant, jurisdiction exists where "the relationship between [the federal question] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Jinks v. Richland County, 538 U.S. 456, 123 S. Ct. 1667, 1669 (2003) (holding that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction

that they form part of the same case or controversy"). The United States Supreme Court explained pendant jurisdiction in this way:

> Pendant jurisdiction, in the sense of judicial <u>power</u>, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is <u>power</u> in federal courts to hear the whole.

<u>Gibbs</u>, 383 U.S. at 726 (emphasis and alterations in original) (citations omitted); <u>see also</u> <u>Raygor v. Regents of the Univ. of Minnesota</u>, 534 U.S. 533, 539 (2002) (adopting the <u>Gibbs</u> definition of pendant jurisdiction); <u>Fielder v. Credit Acceptance Corp.</u>, 188 F.3d 1031, 1037 (8th Cir. 1999) (defining supplemental jurisdiction as over claims arising from a "common nucleus of operative fact" and stating that there is supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

A challenge to supplemental jurisdiction may take place at any time. See <u>Gibbs</u>, 383 U.S. at 727 ("The question of power will ordinarily be resolved on the pleadings. But the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation. Pretrial procedures or even the trial itself may reveal a substantial hegemony of state law claims, or likelihood of jury confusion, which

5

could not have been anticipated at the pleading stage.").[1]  In addition, in the event of a challenge, the party asserting supplemental jurisdiction bears the burden of establishing it exists.  S.K. and Z.K. v. Anoka-Hennepin Indep. Sch. Dist. No. 11, 399 F.Supp. 2d 963, 967 (D.Minn. 2005) (citing Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990)).  Therefore, Boston Scientific must meet the test for supplemental jurisdiction set forth in 28 U.S.C. §1367(a) and establish a "common nucleus of operative fact" between its federal patent infringement claim and its state misappropriation of a trade secrets claim, as explained in Gibbs.

As to what constitutes the "common nucleus of operative fact" standard set forth in Gibbs, this Court is guided by the approach articulated in Hunt v. Up North Plastics, Inc., 980 F.Supp. 1042, 1044-1045 (D.Minn. 1997).

> A more useful approach, and one that conforms to the way courts have actually applied the Gibbs standard, is to determine whether there is, at minimum, a discernable overlap between the operative facts underlying the federal claims and those underlying the appended state claims. See, e.g., Lyon, 45 F.3d at 760-61 (stating that the inquiry is whether the federal and state claims are merely alternative theories of recovery based on the same acts); Blue Dane, 952 F.Supp. at 1408 n. 5 ("Using the Gibbs formulation, the ultimate inquiry is whether the facts in the main claim and counterclaim are both 'common' and 'operative.'"); Salei v. Boardwalk Regency Corp., 913 F.Supp. 993, 999 (E.D.Mich. 1996) (finding no

---

[1]  Despite the fact that this Court found in May of 2006 sufficient overlap of Boston Scientific's claim of patent infringement with its trade secrets claim to permit amendment of its complaint, does not prevent ev3 or the Court from revisiting the issue of whether the trade secrets claim, as it is now framed, sufficiently overlaps with the patent infringement case so as to warrant inclusion in the patent case.  Similarly, while in December 2006, the Court determined that the nineteen Global Communications Briefs produced to Boston Scientific were sufficiently related to Boston Scientific's trade secrets claim to warrant discovery pertaining to those documents, the Court was not ruling on the impact of the additional briefs on the issue of supplemental jurisdiction over the trade secrets claim.  In fact, it expressly recognized ev3's right to challenge the trade secrets claim when it stated that ev3 was not precluded from pursuing a motion to sever Boston Scientific's trade secrets claims from the suit.  See December 8, 2006 Order, ¶ 4.

supplemental jurisdiction where claims were based on separate operative facts); Nicol, 767 F.Supp. at 748 (inquiring whether the state and federal claims are "separately maintainable and determinable without any reference to the facts alleged ... with regard to the other count.") (quoting Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 848 (4th Cir. 1974)).

Id. at 1044-1045.

In reaching this conclusion, the Hunt court found that this methodology was consistent with the test the Eighth Circuit utilized for determining whether a counterclaim arose out of the same "transaction or occurrence" as the original claim under Fed.R.Civ.P. 13(a). Id., n. 3. That is, "[t]he court analyzes whether the issues of fact and law raised by the claim and counterclaim are largely the same, whether res judicata would bar a subsequent suit on the counterclaim, whether substantially the same evidence will support or refute the plaintiff's claim and the counterclaim, and whether there is a logical relationship between the claims." Id. (citations omitted).

Based on Gibbs and Hunt, this Court finds that Boston Scientific has not met its burden of establishing supplemental jurisdiction under 28 U.S.C. §1367(a). Specifically, Boston Scientific has not shown that there is a discernable overlap between the operative facts underlying its federal claim of patent infringement and the operative facts underlying its state trade secrets claim, as it is now alleged.

When Boston Scientific originally moved to amend its Complaint to include the state trade secrets claim, it described its claim as follows:

> The trade secret claim is part of the same case or controversy (and derives from a common nucleus of operative fact, see United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)) not only because ev3's theft of Boston Scientific's trade secrets might constitute evidence of copying to support Boston Scientific's allegation of ev3's willful infringement and the non-obviousness of Boston Scientific's patented inventions, but also because the facts surrounding the parties' marketing of their embolic

7

protection devices are central both to misappropriation and to patent damages.

Pl. Mem. in Support of Motion to Amend Complaint, pp. 6-7.  [Docket No. 46].

Boston Scientific further stated that the claim constituted a straightforward application of Minnesota's Uniform Trade Secrets Act, and that amending the Complaint would not require additional discovery that would necessitate a change in the discovery schedule, noting only that it envisioned additional interrogatories and deposition testimony regarding the document.  Id. at 6.  The Court permitted the amendment, along with ev3's proposed amendment to add to its counterclaim of patent infringement by Boston Scientific of its '019 patent.[2]  In reaching this conclusion, this Court stated:

> This Court is satisfied that the patent claims by both parties and Boston Scientific's proposed trade secret claim—all claims which arise out of the parties' development and marketing of competing embolic protection devices—share sufficiently common factual and legal issues that they should be addressed in one suit.  It makes no sense to have separate discovery, separate Markman hearings, separate expert development and separate trials on claims that have so much overlap in facts and legal determinations.  On that basis, this Court concludes that judicial efficiency mandates that there be a single lawsuit on Boston Scientific's patent infringement and trade secret claims and ev3 patent infringement claims.

Order dated May 26, 2006, at p. 4 [Docket No. 69].

Boston Scientific then amended its Complaint, and asserted two claims against ev3: Count One alleged that ev3 infringed upon Boston Scientific's embolic protection patents; Count Two alleged misappropriation of "Plaintiffs' Trade Secrets" which Boston Scientific defined as "certain useful and valuable trade secrets <u>concerning the market for embolic protection devices and concerning products which do or may in the future</u>

---

[2]   ev3 did not object to Boston Scientific's proposed amendment, so long as its proposed amendment to its counterclaim was also allowed.  Def. Mem. in Opposition to Motion to Amend Complaint, p. 1 [Docket No. 51].

8

<u>compete in that market</u> ('Plaintiffs' Trade Secrets').'" Am. Complaint ¶ 23 (emphasis added). Thus, Boston Scientific's patent infringement claim alleged that ev3 infringed upon their embolic protection patents, and Boston Scientific's trade secrets claim was premised on embolic protection devices and products which competed in the embolic protection market. Since both the patent infringement claim and the trade secrets claim concerned embolic protection products, there was a common nucleus of operating facts for both claims at that time.

In contrast, Boston Scientific has now added the nineteen other Global Communication Briefs to its trade secret claim, and currently describes the claim as follows:

> The form/format and the substance of [bates numbered documents] and the use of Global Communications Briefs as an internal communication tool reflect highly confidential, trade secret information of Boston Scientific that ev3 has misappropriated, including, inter alia, Boston Scientific's detailed market evaluation and competitive analysis of various markets and submarkets, and Boston Scientific's business and program objectives with respect to its position within those markets, as well as the form and format for organizing such information.

Robbennolt Decl. (filed under seal), Ex. B (Boston Scientific's Fourth Supplemental Response to Interrogatory No. 12), p. 2 [Docket No. 140].

Boston Scientific also characterized its Global Communications Briefs as follows:

> More particularly, and among other things, these plans and analyses disclose Boston Scientific's market introduction plans, novel strategies for maintaining market position, future product classes, product clearance forecasts, analysis of market opportunities, technical design details regarding Boston Scientific's products, and comparative analyses of competitor's products.

<u>Id</u>., p. 3-4.

9

As Boston Scientific's trade secrets claim now stands, there is no longer a discernable overlap between the operative facts underlying the federal claim of patent infringement of its embolic protection patents, and the facts underlying its trade secrets claim. Nineteen of the twenty Global Communications Briefs deal with a subject matter other than embolic protection;[3] consequently, the focus of the trade secrets claim has now shifted from the use of one Global Communication Brief as a marketing tool for embolic protection devices to the use of Global Communication Briefs generally as a vehicle for marketing a number of different products. It is obvious that those nineteen Global Communications Briefs that do not concern embolic protection products by necessity will require proof of different facts than the facts necessary to prove up the embolic protection patent infringement claims.

In order to defeat ev3's motion, Boston Scientific submits that the additional Global Communications Briefs relate to the marketing and sale of certain devices that are used with the embolic protection devices (e.g. stents, balloon angioplasty catheters), and that many of the additional Global Communications Briefs "relate to Boston Scientific's general marketing and advertising strategies across a variety of product lines, including the embolic protection devices which the parties' patents are principally directed." Pl. Mem. in Opp., p. 11-12. The Court does not find this explanation sufficient to confer supplemental jurisdiction over Boston Scientific's trade secrets claim. Boston Scientific's patent infringement case derives from ev3's allegedly

---

[3] The subject matter of the nineteen additional Global Communications Briefs included assorted Boston Scientific devices, such as cardiology balloons, stents, cutting balloons and catheters. Several briefs also discussed Boston Scientific's presence at and approach to industry trade shows for a variety of products. See Simerson Decl. (filed under seal) to Declaration of Diane L. Simerson, Ex. F [Docket No. 128].

10

unlawful use of Boston Scientific's embolic protection patents, whereas Boston Scientific's trade secret case derives from a former employee taking a number of marketing documents (only one of which concerns embolic protection) well after the Boston Scientific embolic protection patents issued, and the subsequent disclosure to and use by ev3 of those documents. Even by Boston Scientific's own description, its trade secrets claim is no longer confined to the marketing strategy of just embolic protection devices – the claim now deals with the general marketing and advertising strategies for a variety of product lines, of which embolic protection devices is only one such line. The issues of fact and law raised by the claims are different, different evidence and witnesses[4] will be used to support the claims, and there is no logical relationship between the claims. In summary, the nuclei of operative facts are different, and Boston Scientific's trade secret and patent claims are therefore not part of the same case or controversy. See Global Maintech Corp v. AIG, 2006 WL 354224 at *6 (D.Minn. 2006).

Accordingly, this Court finds that it does not have supplemental jurisdiction over Boston Scientific's state misappropriation of trade secrets claim and recommends dismissal of that claim on that basis.

### B. Jurisdiction in Combination with a CFAA Claim

In its opposition, Boston Scientific alternatively asserted that even if the Court lacked supplemental jurisdiction over the trade secrets claim, federal jurisdiction over

---

[4] According to ev3, at most, only four witnesses out of the 72 witnesses identified by the parties for both the patent infringement and trade secrets claims will overlap. Def.'s Reply Mem., p. 13. Those four witnesses were predominantly involved with the embolic protection Global Communication Brief. Id. In any event, the fact "[t]hat the claims involve one or more common actors is, however, insufficient, without more, to create a common nucleus of operative fact." Gibbs, 383 U.S. at 1045.

11

the claim exists when combined with a claim under the CFAA. Pl. Mem. in Opp., p. 17. Boston Scientific alleged that in their acts of misappropriation, ev3 and Avery Augustine violated the CFAA, thereby providing independent federal jurisdiction over the substance of the misappropriation claim. Id. In particular, Boston Scientific claimed that ev3 and Augustine violated 18 U.S.C. § 1030(a)(4), which provides civil and criminal penalties against anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…" Id. citing 18 U.S.C. § 1030(a)(4). Boston Scientific proposed that rather than dismissing its trade secrets claim, it be permitted to amend its complaint to add a claim under the CFAA. Id. at p. 18.

In response, ev3 argued that Boston Scientific's request to amend its complaint to assert a claim under the CFAA should be rejected on grounds that it is untimely, was inappropriately raised, and is inaccurate and futile. Def.'s Reply Mem., pp. 20-22.

For the following reasons, the Court will not permit Boston Scientific to amend its Complaint to add a CFAA claim so as to create federal jurisdiction over the trade secrets claim.

First, there is no properly filed motion to amend the complaint before the Court. Under this Court's Pretrial Scheduling Order, parties seeking to amend the pleadings were to serve and file such a motion, and provide a redlined version reflecting the changes contained in the proposed amended pleading. See Amended Pretrial Scheduling Order [Docket No. 43]. Boston Scientific has made no such filing.

12

Second, the request is not timely. The deadline for motions seeking to amend the pleadings or to add claims or parties was January 16, 2006, well over a year ago. Id.

Third, even if the request was properly before the Court, Boston Scientific has not presented any evidence to show good cause for its belated request to amend. Under Rule 15(a) leave to amend should be granted liberally, if "justice so requires." However, the Eighth Circuit has held that when a party has filed a motion to amend his complaint after the deadline provided in a court's pretrial scheduling order, then the court may properly require, pursuant to Federal Rules of Civil Procedure 16(b), that good cause be shown for leave to file a pleading that is out of time with that order. See Freeman v. Busch, 349 F.3d 582, 589 (8th Cir. 2003) (citing In re Milk Prod. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999), cert. denied, 529 U.S. 1038 (2000)). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." In re Milk Prod. Antitrust Litig., 195 F.3d at 437-38 (citation omitted).

The deadline to amend pleadings in this case was January 16, 2006. Therefore, because Boston Scientific has "moved" to amend its Complaint after the deadline for amending pleadings expired, the "good cause" standard of Rule 16(b) applies to its motion to amend, in addition to Rule 15(a). Under Rule 16(b), "[a] schedule shall not be modified except upon a showing of good cause and by leave of [court]." Fed. R. Civ. P. 16(b). Similarly, Local Rule 16.3 states: "Once the pretrial discovery schedule is adopted, it shall not be extended or modified except upon written motion and for good

13

cause shown." According to the court in Scheidecker v. Arvig Enterprises, 193 F.R.D. 630 (D.Minn. 2000), "the 'good cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably be met despite the diligence of the party seeking the extension." Id. at 632; see also Archer Daniels Midland v. Aon, 187 F.R.D. 578, 581-82 (D.Minn. 1999) (same) (quoting Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment). Rule16(b) focuses on "the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses, inclusive of inadvertence and neglect, which commonly undergird an untimely Motion to Amend." Scheidecker, 193F.R.D. at 632 n.1 (citations omitted). Further, Rule 16(b) does not look at prejudice to the non-moving party. See Archer Daniels Midland, 187 F.R.D. at 582 (citing Luigino's, Inc. v. Pezrow Cos., Inc., 178 F.R.D. 523, 525 (D. Minn. 1998)). Scheduling Orders pursuant to Rule 16(b)(1) "assure that at some point both the parties and the pleadings will be fixed. . ." Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment.

Boston Scientific's only explanation for its belated proposal that it should be permitted to assert a claim under the CFAA was that it had "refrained from seeking to assert its CFAA claim because it was willing to rely on the remedies available under its trade secret claim, and in the interest of keeping this case moving forward economically and efficiently, did not want to further complicate the proceedings." Pl.'s Mem., p. 18. While this Court appreciates Boston Scientific's attention to the efficiency of these proceedings, this concern is not a sufficient reason for waiting to raise its CFAA claim more than a year after the date of the deadline to amend the pleadings has passed.

Boston Scientific has not provided a written motion, has not shown good cause, and has not demonstrated the required diligence to support its request that it be permitted to amend the complaint at this late juncture in the proceedings. Accordingly, the Court finds no reason to permit Boston Scientific to add a CFAA claim at this time.

## III. CONCLUSION

Based upon the foregoing, the Court concludes that it does not have jurisdiction over Boston Scientific's state trade secrets claim under 28 U.S.C. §1367. Therefore, it is recommended that the Court grant ev3's motion and dismiss the misappropriation of a trade secrets claim for lack of subject matter jurisdiction.

### RECOMMENDATION

For the reasons set forth above, it is recommended that:

1. Defendant ev3's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 125] be **GRANTED**.

Dated: June 26, 2007

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **July 13, 2007** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.